IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-334

No. COA21-534

Filed 17 May 2022

Wake County, No. 20 CVS 6247

ANN HERRING FOX, individually and on behalf of the P.G. FOX, JR. REVOCABLE
TRUST and RUSSELL LEE STEPHENSON, III on behalf of the P.G. FOX, JR.
REVOCABLE TRUST, Plaintiffs,

v.

SARAH WESLEY FOX and CRAIG B. WHEATON, individually, and in their
representative capacities as Trustees of the P.G. FOX, JR. REVOCABLE TRUST;
and SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.,
Defendants.

Appeal by Plaintiffs from orders entered on 23 April 2021 by Judge G. Bryan

Collins, Jr., in Wake County Superior Court. Heard in the Court of Appeals 22 March

2022.

*Rossabi Law Partners, by Amiel J. Rossabi and Gavin J. Reardon, for Plaintiff-Appellant Ann Herring Fox.*

*Penry Riemann PLLC, by J. Anthony Penry, for Defendant-Appellees Sarah Wesley Fox and Craig B. Wheaton as trustees, and Nelson Mullins Riley & Scarborough, LLP, by Mark A. Stafford, for Defendant-Appellees Sarah Wesley Fox and Craig B. Wheaton individually.*

JACKSON, Judge.

¶ 1        Ann Herring Fox ("Plaintiff") appeals from the trial court's orders dismissing

her complaint under Rules 9 and 12 of the North Carolina Rules of Civil Procedure.

Plaintiff Russell Lee Stephenson, III, with the other parties' consent, moved to

voluntarily dismiss his appeal from the orders on 23 November 2021, which our Court allowed the following day. Plaintiff also moved on 23 November 2021 to voluntarily dismiss her appeal from one of the trial court's 23 April 2021 orders of dismissal, which dismissed the case against Defendant Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P. ("Smith Anderson"). That motion was also allowed by our Court on 24 November 2021. Accordingly, Plaintiff is the sole remaining appellant and Defendants Sarah Wesley Fox and Craig B. Wheaton ("Defendants") are the two remaining appellees. After careful review, we affirm the order of the trial court in part, reverse it in part, and remand the case for further proceedings.

## I. Background

¶ 2     This is a dispute about P.G. Fox, Jr., M.D.'s ("Dr. Fox") revocable trust and a home the trust owns jointly with Plaintiff. In late 2012 or early 2013, Dr. Fox engaged Smith Anderson, a law firm, to prepare his will and trust. The will and trust revoked all prior wills and trusts. On 28 January 2013, Dr. Fox executed the will and trust. On 22 February 2014, Dr. Fox died.

¶ 3     At the time of his death, Plaintiff was married to Dr. Fox. She was his third wife, and they had been married for 24 years. She lives in a home she purchased jointly with Dr. Fox as tenants in common, in which she owns an 11 percent interest, reflecting the proportion of the purchase price she paid with her separate funds. Dr. Fox's trust owns the remaining 89 percent of the home, reflecting the proportion of

the price Dr. Fox paid for the home.

¶ 4        Defendant Fox is Dr. Fox's daughter and Defendant Wheaton is her husband. Both are lawyers, and at the time Dr. Fox engaged Smith Anderson to prepare the will and trust, Defendants were employed by Smith Anderson.

¶ 5        Plaintiff, Defendant Fox, and Defendants' children are the beneficiaries of the trust.[1]  The trust terms appoint Defendants and Russell Lee Stephenson, Jr., ("Mr. Stephenson") as Dr. Fox's successor trustees.  Mr. Stephenson is Plaintiff's former husband.  On 8 July 2015, Mr. Stephenson resigned as a trustee, apparently on the understanding (1) that his appointment as a successor trustee was a mistake; (2) that Dr. Fox had intended to appoint Mr. Stephenson's son, Russell Lee Stephenson, III, ("Lee") as a successor trustee, not Mr. Stephenson; and (3) that Lee would be appointed as a trustee by a majority of Dr. Fox's surviving issue upon Mr. Stephenson's resignation, which the trust terms authorized.  Lee is Plaintiff and Mr. Stephenson's son.

¶ 6        After Dr. Fox passed away, Defendant Wheaton began making distributions from the trust to his wife and children for their health, maintenance, and support, as purportedly authorized by the terms of the trust.   No distributions were made to Plaintiff for her health, maintenance, or support, however, despite trust terms

---

[1] All of Dr. Fox's issue are beneficiaries, so any of Dr. Fox's great-grandchildren also would be.

authorizing such distributions. Instead, Defendants attributed distributions to Plaintiff for continuing to live in the home, essentially charging her rent for continuing to live in the home and treating the rent Plaintiff was not paying as a recurring distribution for Plaintiff's health, maintenance, and support.

¶ 7 In 2016, Plaintiff engaged counsel and requested an accounting of the trust for the first time. The trust terms require Defendants to provide an accounting of the trust at least annually upon the request of a beneficiary.

¶ 8 The trust terms also require Defendants to pay for the trust's share—that is, 89 percent—of the cost of maintaining the home for as long as the home remains trust property. In 2017, Defendants refused to reimburse Plaintiff for certain expenses she claimed were incurred to maintain the home because they believed the expenses either were not incurred to maintain the home or were inadequately documented. They also notified Plaintiff that they wanted to sell the home. In 2019, Defendants again refused to reimburse Plaintiff for expenses she claimed were incurred to maintain the home because of what they considered inadequate documentation.

¶ 9 On 7 August 2019, Plaintiff filed a petition to remove Defendants as trustees with the Wake County Clerk of Superior Court. On 29 May 2020, Plaintiff filed this suit. The petition to remove Defendants as trustees was still pending at the time Plaintiff filed suit.

¶ 10 In her complaint, Plaintiff asserts eight claims: (1) breach of fiduciary duty;

(2) reformation of trust based on either unilateral mistake induced by fraud or mutual mistake; (3) legal malpractice; (4) civil conspiracy; (5) constructive fraud; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; and (8) conversion. In her prayer for relief, Plaintiff requests actual and punitive damages; reformation or modification of the trust; disgorgement of all distributions to Defendant Fox and Defendants' children and their return to the trust; and costs and attorney's fees.

¶ 11 On 5 August 2020, Defendants moved to dismiss Plaintiff's complaint under Rules 9 and 12 of the North Carolina Rules of Civil Procedure. Smith Anderson filed a motion to dismiss under Rules 9 and 12 the same day. The motions came on for hearing before the Honorable G. Bryan Collins, Jr., in Wake County Superior Court on 15 September 2020. The trial court granted the motions in two orders entered on 23 April 2021.

¶ 12 Plaintiff timely noticed appeal on 14 May 2021.

## II. Analysis

¶ 13 Plaintiff's complaint asserts numerous causes of action against Defendants as trustees and individuals and many of these claims overlap, are incorrectly captioned, and are time-barred. Several appear to lack any merit. Nevertheless, we hold that Plaintiff's complaint states two valid claims for breach of trust, one valid claim for constructive fraud against Defendants as trustees, and one valid claim for civil

conspiracy against Defendants as trustees.

¶ 14 Specifically, the valid claims for breach of trust are (1) for allegedly making unauthorized distributions for health, maintenance, and support to Defendant Fox and her children while wrongfully withholding distributions for health, maintenance, and support from Plaintiff and (2) for failing to fully reimburse Plaintiff for the trust's share of the cost to maintain the home Plaintiff owns jointly with the trust. The claim for constructive fraud against Defendants as trustees is based on an alleged error in Dr. Fox's trust appointing Mr. Stephenson as a successor trustee and Defendant Wheaton inducing Mr. Stephenson to resign as a trustee on the pretext that Lee would be appointed after Mr. Stephenson's resignation. The valid claim for civil conspiracy against Defendants as trustees is that Defendants agreed to take control of the trust through Mr. Stephenson's resignation and make the allegedly improper distributions while withholding distributions from Plaintiff as part of a deliberate, premeditated plan. Because these are valid claims, the trial court erred in dismissing them. We therefore reverse the trial court's order in part and remand the case for further proceedings.

**A. Introduction and Standard of Review**

¶ 15 "A Rule 12(b)(6) motion tests the legal sufficiency of the pleading." *Sterner v. Penn,* 159 N.C. App. 626, 628, 583 S.E.2d 670, 672 (2003) (citation omitted).

A Rule 12(b)(6) motion will be granted (1) when the face of

> the complaint reveals that no law supports plaintiff's claim; (2) when the face of the complaint reveals that some fact essential to plaintiff's claim is missing; or (3) when some fact disclosed in the complaint defeats plaintiff's claim. We treat all factual allegations of the pleading as true but not conclusions of law. In sum, a Rule 12(b)(6) motion asks the court to determine whether the complaint alleges the substantive elements of a legally recognized claim.

*Id.* at 628-29, 583 S.E.2d at 872 (cleaned up). In determining whether to grant a Rule 12 motion, exhibits attached to a complaint are considered a part thereof "because '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" *Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018) (quoting N.C. Gen. Stat. § 1A-1, Rule 10(c)). However, "matters outside the complaint are not germane to a Rule 12(b)(6) motion." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203, 652 S.E.2d 701, 707 (2007). Moreover, "[g]eneral allegations of wrongdoing, which do not specify the alleged wrongful act or omission, such as the allegation that the defendant did other things not authorized by the laws of North Carolina in the management of a fiduciary estate, are mere conclusions of law." *Kuykendall v. Proctor*, 270 N.C. 510, 514-15, 155 S.E.2d 293, 298 (1967) (internal marks omitted).

¶ 16    On appeal, our review is de novo. *Spoor on behalf of JR Int'l Holdings, LLC v. Barth*, 257 N.C. App. 721, 724, 811 S.E.2d 609, 612 (2018). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that

of the lower tribunal." *Fields v. H & E Equip. Servs.*, 240 N.C. App. 483, 486, 771 S.E.2d 791, 793 (2015) (citation omitted).

## B. Plaintiff's Claims

¶ 17 This is an action against Defendants in both their individual capacities and as trustees of Dr. Fox's trust. We address the claims against Defendants individually first. Then we turn to the claims against them as trustees.

### 1. *Individual Capacity Claims*

#### a. *The Challenge to the Validity of the Trust Is Time-Barred*

¶ 18 As noted previously, Plaintiff asserts claims against Defendants for breach of fiduciary duty, constructive fraud, and civil conspiracy.[2] However, certain allegations in Plaintiff's breach of fiduciary duty claim cannot be construed as a claim against Defendants individually because the allegations are based on alleged failures by Defendants to fulfill their duties as trustees. While "it is clear that the trustee of a trust has a fiduciary obligation to the beneficiary of the trust[,]" *Melvin v. Home Fed. Sav. & Loan Ass'n*, 125 N.C. App. 660, 664, 482 S.E.2d 6, 8 (1997), under the North Carolina Uniform Trust Code, "[a] violation by a trustee of a duty the trustee owes under a trust is a breach of trust[,]" N.C. Gen. Stat. § 36C-10-1001(a) (2021).

---

[2] Although Plaintiff also asserted claims against Defendants for reformation of trust, legal malpractice, intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion, Plaintiff does not argue any error in the dismissal of these claims, thereby abandoning them. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

¶ 19        Paragraph 52 of Plaintiff's complaint alleges:

> 52.    Despite the fiduciary duties owed, Defendants have breached their fiduciary duties to Plaintiffs by, among other things:
>
>> (a)    denying Mrs. Fox distributions owed to her under the Trust;
>>
>> (b)    attributing to Mrs. Fox "rent" from the Trust that she has not received;
>>
>> (c)    making distributions to themselves, their children and others in violation of the express and implied terms of the Trust;
>>
>> (d)    devising, perpetrating and continuing to perpetrate the Scheme;[3]
>>
>> (e)    harassing and intimidating Plaintiffs,

---

[3] The "Scheme" is defined in paragraph 10 of Plaintiff's complaint as follows:

> 10.    Upon information and belief, in or about 2012, Defendant Fox and Defendant Wheaton, together with one or more lawyers at Defendant Smith Anderson, formulated a scheme by which they would cause to be created and signed by Dr. Fox a trust document which would:
>
>> (a)    contain ambiguous language that Defendant Fox and Defendant Wheaton could use, together with their inequitable bargaining power and superior knowledge of the law over Plaintiffs, illicitly, to construe in their favor and deprive Mrs. Fox of assets Dr. Fox intended her to have;
>>
>> (b)    nullify Dr. Fox's intent and plan to have Lee serve as a co-trustee of the Trust; and
>>
>> (c)    misinterpret and violate the terms of the Trust (hereinafter, the "Scheme").

including about the sale of the Primary Residence;

(f)     failing to appoint Lee as a co-trustee; and

(g)     failing to provide, at all and/or in a timely manner, accountings of the Trust.

¶ 20     In essence, Plaintiff's claim for breach of fiduciary duty is two separate claims: (1) a claim challenging the validity of the trust based on the perpetration of what Plaintiff characterizes as a "scheme" to change Dr. Fox's estate plan to wrongfully benefit Defendants and their children at Plaintiff's expense; and (2) a claim for breach of trust for alleged failures to make required distributions, making unauthorized distributions, and failure to provide timely accountings.[4]  The claim challenging the validity of the trust is a claim against Defendants individually because it is based on alleged actions by Defendants outside their capacities as trustees, which allegedly occurred before they were appointed as trustees.  The claim based on alleged failures to make required distributions, making unauthorized distributions, and failing to provide accountings is a claim for breach of trust against Defendants as trustees, not as individuals.  *See* N.C. Gen. Stat. § 36C-10-1001(a) (2021).

¶ 21     The statute of limitations for a claim contesting the validity of a revocable trust is three years after the settlor's death or, at the trustee's election, 120 days after the

---

[4] Plaintiff also alleges that attributing distributions to her for continuing to live in the home she jointly owns with the trust constitutes a breach of fiduciary duty.  We consider attributing distributions to Plaintiff for continuing to live in the home that allegedly was unauthorized to be a subcategory of alleged failures to make required distributions.

settlor's death if the trustee gives proper notice. *Id.* § 36C-6-604(a). The claim challenging the validity of the trust is time-barred because Dr. Fox died on 22 February 2014 and Plaintiff did not bring this suit until 29 May 2020, over six years after Dr. Fox's death—over three years after the statute of limitations had run. This suit is the first time the validity of the trust has been challenged: notably, Plaintiff did not challenge the validity of the trust in the 7 August 2019 petition to remove Defendants as trustees filed with the Clerk of Superior Court of Wake County by her former counsel, nor does any of her counsel take the position that the trust is invalid in any of the correspondence included in the record on appeal.

### b. *The Complaint Does Not State a Claim for Constructive Fraud Against Defendants Individually*

¶ 22        Plaintiff's claim for constructive fraud against Defendants individually fails because the allegations in the complaint do not adequately allege a fiduciary relationship between Plaintiff and Defendants as a matter of fact.

¶ 23        "It is axiomatic that '[f]or a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties.'" *Howe v. Links Club Condominium Assoc., Inc.*, 263 N.C. App. 130, 147, 823 S.E.2d 439, 453 (2018) (quoting *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). "In the event that a party fails to allege any special circumstances that could establish a fiduciary relationship, dismissal of a claim which hinges upon the existence of such a relationship would be

appropriate." *Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 599, 821 S.E.2d 711, 725 (2018) (cleaned up).

> Though difficult to define in precise terms, a fiduciary relationship is generally described as arising when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. A fiduciary relationship may exist in law or in fact. For that reason, even when a fiduciary relationship does not arise as a matter of law, that is, due to the legal relations between two parties, it may yet exist as a matter of fact in such instances when there is confidence reposed on one side, and the resulting superiority and influence on the other.

*Id.* at 599-600, 821 S.E.2d at 725 (cleaned up).

¶ 24    However, "detailed factual allegations, rather than mere conclusory assertions, are necessary to demonstrate the existence of a fiduciary relationship as a matter of fact." *Id.* at 600, 821 S.E.2d at 726 (citation omitted). Moreover, "it has long been established that the finding of a familial relationship alone does not create a fiduciary relationship." *Holloway v. Holloway*, 221 N.C. App. 156, 165, 726 S.E.2d 198, 204-05 (2012) (citation omitted). "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 621, 730 S.E.2d 763, 767 (2012) (citation omitted).

¶ 25   The most Plaintiff's complaint does to allege that a fiduciary relationship existed between her and Defendants as a matter fact is to allege that Defendant Fox is Dr. Fox's daughter and Defendant Wheaton is her husband, and that Plaintiff "reposed special confidence and trust in Defendants because of the close familial relationship with Defendant[s] . . . and because of their status as co-trustees and attorneys licensed to practice law in the State of North Carolina." These allegations are mere conclusory assertions that are not supported by any allegations regarding any special circumstance giving rise to a fiduciary relationship between Plaintiff and Defendants as a matter of fact. While attorneys "owe a fiduciary duty to their clients[,]" *N.C. State Bar v. Gilbert*, 151 N.C. App. 299, 311, 566 S.E.2d 685, 692 (2002), they do not to non-clients, *see Noblot v. Timmons*, 177 N.C. App. 258, 263-64, 628 S.E.2d 413, 415-16 (2006), and there is no allegation in this case that Defendants or any other attorney associated in practice with either of them has ever represented Plaintiff.[5]   Accordingly, the trial court did not err in dismissing the claim for

---

[5] As we observed in *Piraino Brothers, LLC v. Atlantic Financial Group, Inc.*, 211 N.C. App. 343, 349-50, 712 S.E.2d 328, 333 (2011),

> [t]he Courts of this State have held attorneys liable for actions that impact non-client third parties in only a few limited situations . . . . *See Title Ins. Co. of Minn. v. Smith, Debnam, Hibbert & Pahl*, 119 N.C. App. 608, 459 S.E.2d 801 (1995), *affirmed and modified in part*, 342 N.C. 887, 467 S.E.2d 241 (1996) (duty applies where the attorney renders a title opinion upon which the non-client is entitled to rely); *Jenkins v. Wheeler*, 69 N.C. App. 140, 316 S.E.2d 354 (1984) (duty applies where there is a complete unity of interests between the

constructive fraud against Defendants individually.

### c. *Civil Conspiracy Is Not an Independent Basis of Liability*

Plaintiff's claim for civil conspiracy against Defendants individually fails because it is derivative of Plaintiff's other claims against Defendants individually and all of Plaintiff's other individual capacity claims against Defendants fail.

"A civil action for conspiracy is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy, rather than the conspiracy itself." *Burton v. Dixon*, 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963).

> To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective. This is because a conspiracy charged does no more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under the proper circumstances the acts of one may be admissible against all. Therefore, we have determined that a complaint sufficiently states a claim for civil conspiracy when it alleges (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy.

*Krawiec*, 370 N.C. at 613-14, 811 S.E.2d at 550-51 (cleaned up).

However, "there is not a separate civil action for civil conspiracy in North

---

attorney's client and the non-client).

Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Because conspiracy is a mode of liability rather than a cause of action, it is derivative of the other claims against a party, and if the other claims fail, so does the conspiracy claim. *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333-34 (2011). Accordingly, the trial court did not err in dismissing Plaintiff's claim for civil conspiracy against Defendants individually because the individual capacity claim challenging the validity of the trust is time-barred and the individual capacity claim for constructive fraud fails to adequately allege a fiduciary relationship as a matter of fact.

### 2. *Defendants as Trustees*

#### a. *The Complaint States Two Valid Claims for Breach of Trust*

¶ 29        As previously noted, we hold that Plaintiff's complaint states two valid claims for breach of trust:  one for allegedly making unauthorized distributions for health, maintenance, and support to Defendant Fox and her children while wrongfully withholding distributions for health, maintenance, and support from Plaintiff; and a second for failing to fully reimburse Plaintiff for the trust's share of the cost to maintain the home Plaintiff owns jointly with the trust.

¶ 30        The duties and powers of trustees are codified in Article 8 of the North Carolina Uniform Trust Code. *See* N.C. Gen. Stat. § 36C-8-801 (2021), *et seq.* These duties include the duties of good faith, loyalty, impartiality, and prudence. *See id.* §§ 36C-

8-801, -802, -803, -804. In general, while "the extent to which a . . . trustee violated his or her fiduciary duty is a separate, and broader, question than the issue of whether he or she violated a specific provision of a written trust instrument[,]" *In re Skinner*, 370 N.C. 126, 144, 804 S.E.2d 449, 461 (2017), violation of a specific provision of a trust constitutes a breach of trust unless the terms of the trust are inconsistent with a trustee's fiduciary duties, *see* N.C. Gen. Stat. §§ 36C-10-1001(a), -1-105(b)(2), (3) (2021).

¶ 31    "Trustees . . . must act in good faith. They can never paramount their personal interest over the interest of those for whom they have assumed to act." *Miller v. McLean*, 252 N.C. 171, 174, 113 S.E.2d 359, 362 (1960) (citations omitted). In addition, a trustee must "maintain complete loyalty to the interests of his beneficiaries." *Howe*, 263 N.C. App. at 149, 823 S.E.2d at 454 (quoting *Wachovia Bank & Trust Co. v. Johnston*, 269 N.C. 701, 711, 153 S.E.2d 449, 457 (1967)) (internal marks omitted). "Should there be any self-interest on the trustee's part in the administration of the trust which would interfere with this duty of complete loyalty, a beneficiary may seek the trustee's removal." *In re Wills of Jacobs*, 91 N.C. App. 138, 143, 370 S.E.2d 860, 864 (1988). In North Carolina, such an action must be brought before the Clerk of Superior Court. N.C. Gen. Stat. § 36C-2-203(a)(1) (2021).

¶ 32    Not all self-dealing by trustees is categorically prohibited, however. As the

official commentary to N.C. Gen. Stat. § 36C-8-802 notes, "it is not uncommon that the trustee will also be a beneficiary." N.C. Gen. Stat. § 36C-8-802, off. cmt. (2021). "The grant to a trustee of authority to make a distribution to a class of beneficiaries that includes the trustee implicitly authorizes the trustee to make distributions for the trustee's own benefit." *Id.*

¶ 33     "The powers of a trustee are either mandatory or discretionary." *Woodard v. Mordecai*, 234 N.C. 463, 471, 67 S.E.2d 639, 644 (1951). "A power is mandatory when it authorizes and commands the trustee to perform some positive act." *Id.* "A power is discretionary when the trustee may either exercise it or refrain from exercising it, or when the time, or manner, or extent of its exercise is left to his discretion." *Id.* (cleaned up). While a court "will always compel the trustee to exercise a mandatory power[,] . . . [it] will not undertake to control the trustee with respect to the exercise of a discretionary power, except to prevent an abuse by him of his discretion." *Id.*

> The trustee abuses his discretion in exercising or failing to exercise a discretionary power if he acts dishonestly, or if he acts with an improper even though not a dishonest motive, or if he fails to use his judgment, or if he acts beyond the bounds of a reasonable judgment.

*Id.* (citations omitted).

> Whether a power is mandatory or discretionary depends upon the intent of the settlor as evidenced by the terms of the trust. The intent of a settlor is determined by the language he chooses to convey his thoughts, the purposes he seeks to accomplish and the situation of the parties

> benefitted by the trust. Use by the settlor of words of permission or option, or reference to the discretion of the trustee, in describing the trustee's power indicates that the settlor intended that the power be discretionary, whereas use of directive or commanding language indicates that a mandatory power was intended.

*Linebacker v. Stout*, 79 N.C. App. 292, 297, 339 S.E.2d 103, 107 (1986) (cleaned up). "Under a true discretionary trust, the trustee may withhold the trust income and principal altogether from the beneficiary and the beneficiary, as well as the creditors and assignees of the beneficiary, cannot compel the trustee to pay over any part of the trust funds." *Id.* at 296, 339 S.E.2d at 106.

¶ 34        The terms of Dr. Fox's trust demonstrate that it is a discretionary trust as to distributions for health, maintenance, and support to the beneficiaries, but mandatory with respect to the trust's share of the cost of maintaining the home it owns jointly with Plaintiff and certain other decisions related to the home. Article III, Section One of the trust directs the trustees until Plaintiff's death or remarriage "to distribute all or any portion of the trust property to [] [Plaintiff] in such amounts and at such times as the Trustee deems necessary for her health, maintenance or support" and to "distribute all or any portion of the trust property to any of [Dr. Fox's] issue in such amounts and at such times as the Trustee deems necessary for the health, maintenance or support in reasonable comfort of any of them." Defendants' powers as trustees to make distributions for Plaintiff's health, maintenance, and

support, as well as distributions for the health, maintenance, and support of Dr. Fox's issue are discretionary because of Dr. Fox's "[u]se . . . of words of permission or option," *id.* at 297, 339 S.E.2d at 107, to wit—"*all or any portion* of the trust property"—with the time, manner, and extent of the exercise of this discretion left to the trustees, *see Woodard*, 234 N.C. at 471, 67 S.E.2d at 644. (Emphasis added.)

¶ 35   The trust creates three important discretionary powers to be exercised by the trustees in connection with the home the trust owns jointly with Plaintiff. Article III, Section Six provides in relevant part that the trustees *may* retain the 89 percent interest in the home and permit Plaintiff "to use and occupy the residence rent free" until her death or remarriage. In addition, this section authorizes the trustees to "sell, rent or otherwise dispose of the trust's interest in the residence if [they] determine[] that occupancy of such residence by [] [Plaintiff] *is contrary to her best interests* and the interests of the beneficiaries succeeding to the trust property after her death or remarriage." (Emphasis added.) Finally, this section authorizes the trustees, in the event of a sale of the home, "to purchase an interest in a replacement residence using such portion of the principal of the trust, including, but not limited to, the trust's share of net proceeds from any sale or other disposition of the trust's interest in the residence[,]" at Plaintiff's election.

¶ 36   The trust terms that are mandatory relate to the cost of maintaining the home and to sale or rental of the home at Plaintiff's election. For as long as the home

remains trust property, Article III, Section Six directs the trustees to "pay out of the trust that percentage of all expenses incurred in connection with carrying, upkeep, maintenance and repair of the residence including, without limitation, taxes, assessments, utilities, insurance and repairs, which is equal to the trust's percentage ownership[.]" That section additionally directs the trustees to "sell or rent the trust's interest in the residence within a reasonable time upon receipt of signed instructions from [] [Plaintiff] to that effect."

¶ 37      There is considerable documentation in the record on appeal of distributions to beneficiaries other than Plaintiff for health, maintenance, and support and to Plaintiff for the trust's share of the cost of maintaining the home, as well as an appraisal of the home completed after Dr. Fox's death that Defendants apparently used to determine a rental value of the home.[6] However, *none* of this documentation would have been properly considered by the trial court at the hearing on Defendants' motion to dismiss, and nothing in the record indicates that the court so considered it,

---

[6] The terms of the trust neither expressly authorize nor prohibit attributing distributions to Plaintiff for health, maintenance, and support for continuing to live in the home. As noted above, the trustees enjoy a discretionary power to permit Plaintiff to continue living in the home unless she informs them in writing that she wants them to sell or rent the trust's interest in the home. Because the trustees' powers to make distributions to the beneficiaries for health, maintenance, and support, including to Plaintiff, are wholly discretionary, on the undeveloped record before us, we cannot say as a matter of law that attributing distributions to Plaintiff for health, maintenance, and support for continuing to live in the home was an abuse of discretion by the trustees or constituted a breach of trust. Nothing in this opinion is intended to suggest or imply what the correct resolution of this issue is in further proceedings on remand, however, which will require considering matters outside the pleadings.

thereby converting the motion to dismiss into one for summary judgment without notice to Plaintiff, which would have been improper. *See, e.g.*, N.C. Gen. Stat. § 1A-A, Rule 12(b) (2021) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). Indeed, in the order of dismissal, the trial court states that it considered only "the complaint and attachments filed by plaintiffs, along with the brief served by defendants and the material served by plaintiffs, as well as the arguments of counsel."

¶ 38 Determining whether Defendants are liable for making unauthorized distributions for health, maintenance, and support to Defendant Fox and their children while withholding distributions for health, maintenance, and support from Plaintiff and for failing to fully reimburse Plaintiff for the trust's share of the cost to maintain the home Plaintiff jointly owns with the trust will require a developed factual record of all distributions of trust property and potentially other evidence, such as evidence in the form of expert opinion regarding whether attributing distributions to Plaintiff for health, maintenance, and support for continuing to live in the home was consistent with the trustees' duties to administer the trust in good

faith, loyally, impartially, and prudently with respect to the interests of *all* beneficiaries, including Plaintiff. Because Plaintiff's claims for breach of trust are legally sufficient, and resolution of these claims will require consideration of matters outside the pleadings and the exhibits thereto, we hold that the trial court erred in dismissing these claims.

### b. *The Complaint States a Valid Claim for Constructive Fraud Against Defendants as Trustees*

¶ 39 Plaintiff's claim for constructive fraud against Defendants as trustees is likewise legally sufficient.

¶ 40 "In order to maintain a claim for constructive fraud, [a] plaintiff[] must show that [she] and [the] defendants were in a relation of trust and confidence which led up to and surrounded the consummation of the transaction in which [the] defendant is alleged to have taken advantage of his position of trust to the hurt of [the] plaintiff." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (internal marks and citation omitted).

> Constructive fraud differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation. Implicit in the requirement that a defendant take advantage of his position of trust to the hurt of plaintiff is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself.

*Id.* (cleaned up).

¶ 41    "Although the elements of constructive fraud and breach of fiduciary duty overlap, each is a separate claim under North Carolina law." *Chisum v. Campagna*, 376 N.C. 680, 706, 2021-NCSC-7 ¶ 47 (internal marks and citation omitted).

> A successful claim for breach of fiduciary duty requires proof that (1) the defendants owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff. A successful claim for constructive fraud requires proof of facts and circumstances (1) which created the relation of trust and confidence between the parties, and (2) which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.

*Id.* at 706, 2021-NCSC-7 ¶ 48 (cleaned up). "Intent to deceive is not an element of constructive fraud." *White v. Consol. Plan., Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) (citation omitted). Thus, "[t]he primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the intent and showing that the defendant benefitted from his breach of duty." *Ironman Med. Props. v. Chodri*, 268 N.C. App. 502, 513, 836 S.E.2d 682, 691 (2019) (citing *White*, 166 N.C. App. at 294, 603 S.E.2d at 156).

¶ 42    Article V, Section Three of the trust appoints Defendants and Mr. Stephenson as successor trustees. That section also provides that if any one or two of the trustees cease to act, the remaining trustee or trustees can continue to serve without a successor being appointed and that a majority of Dr. Fox's adult issue who are living

and competent *may* appoint a successor trustee. These terms thus confer a discretionary power on Defendant Fox and her children to appoint a successor trustee, assuming they are all competent.

¶ 43     Paragraph 82 of Plaintiff's complaint alleges:

> 82.     Defendant Fox and Defendant Wheaton obtained their present control over the Trust and its assets, mismanaged the trust and its assets, and misappropriated to themselves and others Funds from the Trust by breaching their fiduciary positions as alleged herein, including by:
>
> (a)     causing Mr. Stephenson's name, rather than Lee's, to be listed in the Trust as co-trustee;
>
> (b)     inducing Lee to secure Mr. Stephenson's resignation as co-trustee under false pretenses;
>
> (c)     falsely representing to Lee, with the intent that he would be convinced and Lee would convince Mrs. Fox, that Lee would be appointed as a co-trustee;
>
> (d)     misappropriating and depleting funds from the Trust through the Scheme and as otherwise alleged herein; and
>
> (e)     violating the terms of the Trust and preventing Mrs. Fox from receiving distributions from the Trust to which she was entitled.

¶ 44     In essence, this claim is that including Mr. Stephenson as a successor trustee rather than Lee in Article V, Section Three was either a simple mistake or some kind of ploy and that Defendant Wheaton induced Mr. Stephenson to resign as a trustee on the pretext that Lee would be appointed upon Mr. Stephenson's resignation while

knowing full well that a majority of Dr. Fox's adult issue—his wife and his children—would refuse to appoint Lee as a successor trustee, which they in turn refused to do once Mr. Stephenson resigned.

¶ 45     Mr. Stephenson was the only obstacle to Defendants' control of the trust before his resignation.  Once he resigned, it is alleged that Defendants exercised the discretionary powers created by the trust and conferred upon them as trustees in a manner that breached their duties to Plaintiff as trustees, thereby benefitting Defendant Fox and their children at Plaintiff's expense.  We hold that the allegations in paragraph 82 of Plaintiff's complaint state a valid claim for constructive fraud against Defendants as trustees.  Accordingly, the trial court erred in dismissing it.

### c. *The Complaint States a Valid Claim for Civil Conspiracy Against Defendants as Trustees*

¶ 46     Because Plaintiff's complaint states two valid claims for breach of trust and one valid claim for constructive fraud against Defendants as trustees, Plaintiff's claim for civil conspiracy against Defendants as trustees, which is derivative of the valid claims against them as trustees, should have survived Defendants' motion to dismiss. Plaintiff alleges in her complaint that Defendants "agreed among themselves to take the actions complained of herein[,]" and, "[a]s a proximate result of Defendants' conspiracy, Plaintiff[] and the Trust have been damaged by:  (a) failure to properly administer the Trust; (b) misuse and misappropriation of Trust funds; and (c) loss of

money to which they are entitled." We hold that these allegations state a valid claim for civil conspiracy against Defendants as trustees because they allege that Defendants agreed to take control of the trust by securing Mr. Stephenson's resignation and then made allegedly improper distributions while withholding distributions from Plaintiff as part of a deliberate, premeditated plan. Accordingly, the trial court erred in dismissing this claim.

### 3. Amendment of Complaint

In her final argument on appeal, Plaintiff contends that she should be allowed an opportunity to amend her complaint to state her claims more fully. We hold that this issue has not been preserved for appellate review.

While generally speaking, "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served," N.C. Gen. Stat. § 1A-1, Rule 15(a) (2021), otherwise, "a party can only amend a pleading with the consent of the trial judge[,]" *Mauney v. Morris*, 316 N.C. 67, 72, 340 S.E.2d 397, 400 (1986) (citation omitted). A trial court's refusal to allow amendment of a complaint is reviewed for an abuse of discretion. *Id.*

Moreover, to preserve an issue for appellate review, a party must both (1) "present[] to the trial court a timely request, objection, or motion, stating the specific

grounds for the ruling . . . desired . . . if the specific grounds [are] not apparent from the context" and (2) "obtain a ruling upon the party's request, objection, or motion." N.C. R. App. P. 10(a). Relatedly, "[u]nder North Carolina Rules of Appellate Procedure 7, 9, and 11, the burden is placed upon the appellant to commence settlement of the record on appeal, including providing a verbatim transcript if available." *State v. Berryman*, 360 N.C. 209, 216, 624 S.E.2d 350, 356 (2006) (citations omitted). Thus, Plaintiff, "as the appellant, bore the burden . . . of ensuring that the record on appeal . . . [was] complete, properly settled, in correct form, and filed[.]" *Id.* at 217, 624 S.E.2d at 356.

¶ 50 Plaintiff has chosen not to include a transcript of the hearing on Defendants' motion to dismiss in the record on appeal on the grounds that no evidence was presented at the hearing and the hearing consisted only of arguments of counsel and colloquy with the court. Plaintiff asserts in her appellate brief that she made an express request for findings of fact and conclusions of law pursuant to Rule 52 of the North Carolina Rules of Civil Procedure to support the trial court's dismissal of her claims, but Defendants dispute this assertion, and there is nothing in the record that indicates such a request was made at the hearing. Because Plaintiff chose not to include a transcript of the hearing in the record, and neither the alleged Rule 52 request nor any ruling on this alleged request are in the record, the issue of whether the trial court abused its discretion by refusing to grant a request that might or might

not have been made has not been preserved for appellate review. As the appellant, Plaintiff bore the burden of including any Rule 52 request in the record.

### III.    Conclusion

We affirm the trial court's dismissal of Plaintiff's individual capacity claims against Defendants. We reverse the trial court's dismissal of Plaintiff's claims for breach of trust for (1) making unauthorized distributions to Defendant Fox and her children while withholding distributions from Plaintiff and for (2) failing to fully reimburse Plaintiff for the trust's share of the cost to maintain the home. In addition, we reverse the trial court's dismissal of Plaintiff's claim for constructive fraud and civil conspiracy against Defendants as trustees for securing control of the trust by inducing Mr. Stephenson to resign as a trustee and then making allegedly improper distributions to Defendant Fox and their children while withholding distributions from Plaintiff. We remand the case for further proceedings on these four claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Chief Judge STROUD and Judge HAMPSON concur.