Lafayette Vill. Pub, LLC v. Burnham, 2022 NCBC 50.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 22 CVS 4913 |

LAFAYETTE VILLAGE PUB, LLC;
JOHN BRONSON; and PAUL G.
BRONSON,

               Plaintiffs,

v.

KENNETH C. BURNHAM,

               Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DIMISS**

THIS MATTER comes before the Court on Defendant's Motion to Dismiss. ("Motion to Dismiss," or "Motion," ECF No. 9.)

THE COURT, having considered the Motion, the briefs of the parties, the arguments of counsel, and all appropriate matters of record, **CONCLUDES** that the Motion should be **GRANTED** for the reasons set forth below.

> *Michael W. Strickland & Associates, P.A., by Michael W. Strickland, for Plaintiffs Lafayette Village Pub, LLC; John Bronson; and Paul G. Bronson.*

> *Davis Hartman Wright, LLP, by Thomas S. Babel, for Defendant Kenneth C. Burnham.*

Davis, Judge.

## INTRODUCTION

1. This action involves individual and derivative claims asserted by two brothers who collectively own a majority membership interest in a limited liability company (LLC) against a defendant who is both a minority member and a member-manager of the LLC. In analyzing the defendant's partial Motion to Dismiss, the

Court must determine whether this case is the rare one in which a fiduciary duty is owed by a *minority* member of an LLC to other members of the company. In addition, the Court is required to address whether the allegations of the Complaint satisfy the "in or affecting commerce" element of a claim for unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes.

## FACTUAL AND PROCEDURAL BACKGROUND

2. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites pertinent facts contained in the Complaint and in documents attached to, referred to, or incorporated by reference in the Complaint that are relevant to the Court's determination of the motion.

3. Plaintiffs John Bronson and Paul G. Bronson (collectively, the "Bronsons"), along with Defendant Kenneth C. Burnham, are each members of Lafayette Village Pub, LLC ("Lafayette").[1] (Complaint, ECF No. 3, at ¶¶ 7–14.)[2]

---

[1] Somewhat oddly, the Complaint states that it is not clear whether Lafayette is a North Carolina LLC or a New York LLC due to the fact that Defendant formed two companies with the same name. (ECF No. 3, at ¶ 1.) The Complaint further asserts that the New York entity lacks authorization to transact business in North Carolina. (*Id.*) The Court anticipates that any resulting confusion will be cleared up during discovery, and, if necessary, any ensuing jurisdictional or choice of law issues can be raised at that time. In the meantime, Defendant has not challenged the jurisdiction of this Court over this matter, and in their briefs the parties appear to assume North Carolina law applies to the present Motion. Therefore, the Court does so as well.

[2] Because the Complaint in this action has been filed by the Bronsons along with Lafayette, they are referred to in this opinion collectively as "Plaintiffs."

4.      Defendant formed Lafayette in 2010 and was the initial member-manager.  (*Id*. at ¶ 7.)  Lafayette was apparently formed for the purpose of operating a restaurant in Raleigh, North Carolina.  (*Id*. at ¶¶ 1, 24.)

5.      Shortly after the formation of Lafayette, Defendant issued a 20% membership interest to Brad Sluman.  (*Id*. at ¶ 8.)  Around that same time, the Bronsons each purchased 6.666% of the company's "issued shares" such that their collective ownership in the company was 13.332%.  (*Id*. at ¶ 9.)

6.      Thereafter, a 20% membership interest was issued to Daniel Gubeaur.  (*Id*. at ¶ 10.)  Sluman complained to Defendant that he should receive additional shares  because he possessed restaurant experience whereas Gubeaur did not have such experience.  (*Id*. at ¶ 11.)  Following Sluman's complaint, his membership interest was increased by 5%.  (*Id*.)

7.      On or about April 2011, Gubeaur expressed his desire to sell a portion of his shares in Lafayette, and Defendant offered the Bronsons the opportunity to purchase some of those shares.  (*Id*. at ¶ 12.)  Following Defendant's offer, "[e]ach of the Bronsons purchased 6.666% . . . [,] giving them a combined ownership interest of 26.664% of [Lafayette]."  (*Id*.)

8.      The following month, "Defendant informed the Bronsons that they could purchase a 15% interest in [Lafayette] which had been owned by . . . Sluman."  (*Id*. at ¶ 13.)  As a result, Paul Bronson purchased 5% and John Bronson purchased 10% of the membership interests in Lafayette that were previously owned by Sluman.  (*Id*.)

9.     Approximately ten years later, in March 2021, Paul Bronson purchased an additional 10% membership interest in Lafayette from another member, Carol Felitz. (*Id*. at ¶ 14.) This purchase increased the Bronsons' collective membership interest in Lafayette to 51.664%. (*Id*.) As of the present date, the Bronsons continue to own a collective majority membership interest in Lafayette.

10.     The Complaint alleges that from the time Defendant formed the company in 2010, Defendant "has managed [Lafayette] as if he were the sole member-manager when in reality both of the Bronsons were member-managers as well." (*Id*. at ¶ 15.) Plaintiffs' claims in this action are essentially based on the following allegations in the Complaint:

a. Defendant has repeatedly refused to provide the Bronsons with access to Lafayette's payroll records, bank records, and business records (*Id*. at ¶¶ 16–18.);

b. Defendant has utilized Lafayette's funds for his personal expenses (*Id*. at ¶ 19.);

c. "Defendant employed the sister of his live-in girlfriend who possessed no restaurant experience nor training for a position [Defendant] created and upon information and belief, paid her for hours that she did not work" (*Id*. at ¶ 20.);

d. Defendant has refused to provide the Bronsons with access to financial records reflecting membership interests in Lafayette (*Id*. at ¶ 21.);

e. Defendant has given membership interests in Lafayette to various associates of his in exchange for cancellation of his personal debts (*Id.* at ¶ 22.);

f. Defendant has refused to allow the Bronsons to see records of government disaster loans that Lafayette has received (*Id.* at ¶ 23.); and

g. "Despite the written objections of member managers owning a majority of the issued and outstanding units of membership, Defendant has closed the restaurant to undertake a major remodeling project." (*Id.* at ¶ 24.)

11. On 6 October 2021, counsel for the Bronsons served written demand upon Lafayette Village Pub, LLC pursuant to N.C.G.S. § 57D-8-01 *et seq.* to investigate the alleged wrongdoings by Defendant and take appropriate action. (*Id.* at ¶ 25.)

12. Plaintiffs filed a Complaint in this action on 21 April 2022. (ECF No. 3.) On 26 May 2022, this case was designated a mandatory complex business case and assigned to the undersigned. (ECF Nos. 1, 2.)

13. The Complaint contains four claims against Defendant: (1) breach of fiduciary duty; (2) constructive fraud; (3) accounting; and (4) unfair and deceptive trade practices ("UDTP"). (ECF No. 3, at ¶¶ 27–45.) Although the Complaint is not a model of specificity, it appears to assert claims both individually and derivatively against Defendant.[3]

---

[3] The parties' briefs with regard to the present Motion are all similarly based on the assumption that both individual and derivative claims have been pled.

14.    On 17 June 2022, Defendant filed the present Motion seeking dismissal of Plaintiffs' claim for UDTP as well as their individual claims for breach of fiduciary duty and constructive fraud.  (ECF No. 9.)

15.    The Court held a hearing on the Motion to Dismiss on 25 August 2022. The Motion is now ripe for decision.

## LEGAL STANDARD

16.    A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of the complaint by presenting the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some recognized legal theory." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994) (cleaned up).

17.    In deciding a Rule 12(b)(6) motion to dismiss, the Court construes the complaint liberally and accepts all well-pled factual allegations as true.  *Krawiec v. Manly*, 370 N.C. 602, 606 (2018); *Laster v. Francis*, 199 N.C. App. 572, 577 (2009). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).  Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up).  The Court may consider any such attached or incorporated documents

without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.*

18. "It is well-established that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up).

## ANALYSIS

### I.    UDTP Claim

19. In his first argument, Defendant contends that Plaintiffs' allegations "relate only to the intercompany[4] actions taken by [Defendant] as a member and manager of Lafayette" and therefore are not "in or affecting commerce" as required for a UDTP claim. (Def.'s Mem. Supp. Mot. Dismiss, ECF No. 10, at p. 1.)

20. Chapter 75 of the North Carolina General Statutes provides, in pertinent part, that "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful. For purposes of this section, 'commerce' includes all business activities, however denominated [.]" N.C.G.S. § 75-1.1(a)–(b) (2019). Therefore, to properly assert a UDTP claim, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72 (2007) (cleaned up).

---

[4] Defendant presumably means to use the term *intracompany* as opposed to *intercompany*.

21. In seeking dismissal of Plaintiffs' UDTP claim, Defendant focuses solely on the second element, arguing that this action is simply "a dispute between members of [Lafayette]." (ECF No. 9, at ¶ 7.) Defendant further asserts that such "[a]ctions based on intercompany [sic] dealings do not affect other market participants or consumers and do not affect commerce." (*Id*.) Plaintiffs, conversely, contend that the conduct alleged in the Complaint did, in fact, affect commerce because Defendant's acts impacted not only Lafayette but also third-parties as well. (Pls.' Mem. Opp. Mot. Dismiss, ECF No. 11, at p. 4.) Plaintiffs offer as examples the effects resulting from Defendant "closing Lafayette's restaurant thereby affecting its numerous employees and Defendant's potential misuse of government sponsored disaster loans that Lafayette received." (*Id*.)

22. Despite the sweeping definition of commerce supplied in the Unfair and Deceptive Trade Practices Act ("UDTPA"), our Supreme Court has stated that "the Act is not intended to apply to all wrongs in a business setting." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593 (1991). Specifically, "the Act is not focused on the internal conduct of individuals within a single market participant, that is, within a single business." *White v. Thompson*, 364 N.C. 47, 53 (2010).

23. For example, in *White*, the defendant, a former partner in a partnership organized to contract with an outside business, was sued by his former partners and the partnership when he "misinformed plaintiffs about the date of certain projects [the partnership] had contracted to perform and began working independently while still a[ ] . . . partner." *Id*. at 54. Our Supreme Court concluded that the defendant's

conduct fell outside the scope of the UDTPA, holding that "[b]ecause defendant . . . unfairly and deceptively interacted only with his partners, his conduct occurred completely within the . . . partnership and entirely outside the purview of the Act." *Id.* The Court reached this conclusion despite the fact that the defendant in that case had set up a separate entity to conduct business that had previously been conducted under the partnership, thereby directing opportunities toward his own entity that had formerly belonged to the partnership. *Id.* at 49, 53.

24. On numerous occasions, this Court has been tasked with determining whether acts alleged in a business dispute between owners of a single entity were "in or affecting commerce" for purposes of the UDTPA. *See, e.g.*, *McFee v. Presley*, 2022 NCBC LEXIS 74, at *38 (N.C. Super. Ct. Jul. 11, 2022); *Poluka v. Willette*, 2021 NCBC LEXIS 105, at *45 (N.C. Super. Ct. Dec. 2, 2021); *Botanisol Holdings II, LLC v. Propheter*, 2021 NCBC LEXIS 94, at *60–67 (N.C. Super. Ct. Oct. 18, 2021); *Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *12–16 (N.C. Super. Ct. Mar. 7, 2018); *JS Real Estate Invs. LLC v. Gee Real Estate, LLC*, 2017 NCBC LEXIS 104, at *17–22 (N.C. Super. Ct. Nov. 9, 2017).

25. This Court has repeatedly rejected arguments that the "in or affecting commerce" element was satisfied simply because the complaint alleged the indirect involvement of third parties. *Poluka* involved claims by one LLC member against another member, who was allegedly engaged in self-dealing and misappropriating LLC funds to the defendant's other company for the defendant's personal benefit. *Poluka*, 2021 NCBC LEXIS 105, at *1, *14. The plaintiff asserted a UDTP claim,

arguing that the alleged conduct met the statutory definition of "in or affecting commerce" because it "affect[ed] commerce more generally." *Id.* at *37. Specifically, the plaintiff sought to rely upon the fact that "the complaint suggest[ed] that money belonging to [the LLC] may have been funneled to [defendant's company.]" *Id.* at *45. This Court held that "[t]he mere presence of [the other company] as a potential beneficiary of [defendant's] alleged wrongful conduct does not alter the fundamental character of this internal dispute." *Id.*

26. In *Botanisol*, the "[p]laintiff alleg[ed] that [defendant] created [a new LLC] to divert opportunities away from [plaintiff and defendant's original LLC] and away from [p]laintiff, as the co-member of [the original LLC]." *Botanisol*, 2021 NCBC LEXIS 94, at *66. This Court ruled that the plaintiff had failed to state a valid UDTP claim because "the focus of the deception was on [the original entity] and its members and was not 'in or affecting commerce.'" *Id.*

27. *Potts* concerned claims by one corporate shareholder against another shareholder who had engaged in self-dealing transactions that funneled money allegedly belonging to the corporation toward entities owned by himself and his family members. *Potts*, 2018 NCBC LEXIS 24, at *2–5. The plaintiff asserted a UDTP claim, arguing that the wrongful conduct by the other shareholder was "in or affecting commerce" within the meaning of the UDTPA because the transactions "were not confined within [the original corporation.]" *Id.* at *12–14. This Court refused to accept this argument, concluding that the plaintiff failed to state a claim for UDTP under Rule 12(b)(6). The Court noted that the defendant

may have carried out his mismanagement and misappropriation of [the corporation's] assets by channeling money and equipment to [an entity set up to benefit defendant and his family] and diverting a corporate opportunity to [a different family member's business]. But the unfairness of these actions, if any, inheres in the relationship between [plaintiff and defendant] as co-owners of [the original corporation].

*Id.* at *15.

28. This Court's recent opinion in *Kelly v. Nolan*, 2022 NCBC LEXIS 78 (N.C. Super. Ct. July 19, 2022), is also instructive. *Kelly* concerned a dispute between the majority and minority shareholders in a professional corporation. The plaintiffs asserted, *inter alia*, a UDTP claim alleging that the majority shareholders had committed various forms of wrongdoing, including withholding money belonging to the plaintiffs, unfairly demanding that the plaintiffs pay certain expenses, and improperly making payments to family members from company assets. *Id.* at *10–13. As in the present case, the defendants sought to dismiss the UDTP claim on the ground that the plaintiffs' allegations arose entirely within the company and therefore were not "in or affecting commerce." *Id.* at *51.

29. The plaintiffs in *Kelly* argued that the professional corporation "is a consumer/patient driven business," and as such, "[e]xpense[s] of such business will necessarily impact prices to the consumer/patient." *Id.* at *54. The plaintiffs further contended that the "[i]llegitimate expenses passed along to Plaintiffs . . . would necessarily come in to play in assessing charges to consumers/patient[s], thereby clearly bringing the matter within the commerce prong for UDTP claims." *Id.* (second alteration in original). The plaintiffs additionally asserted that the "interaction with health insurers," as well as the "interaction and effect on the purchase price and

negotiation with three distinct companies who purchased [the professional corporation][,]" further satisfied the commerce element of a UDTP claim. *Id.*

30. In granting the defendants' motion, this Court stated the following:

As noted above, Plaintiffs' main argument as to why Defendants' alleged conduct was "in or affecting commerce" is that their acts had indirect consequences outside the company on patients and consumers. "The Supreme Court's refusal in *White* to allow indirect involvement of other market participants to trigger liability under Section 75-1.1 forecloses [this] argument." *Powell v. Dunn,* 2014 NCBC LEXIS 3, at **10–11 (N.C. Super. Ct. Jan. 28, 2014); *see White,* 346 N.C. at 54 (rejecting plaintiffs' argument that defendant's internal conduct was "in or affecting commerce" because it indirectly "reduc[ed] competition and potentially affect[ed] prices in the market"); *see also LLG-NRMH, LLC v. Northern Riverfront Marina & Hotel, LLLP,* 2018 NCBC LEXIS 105, at *13 (N.C. Super. Ct. Oct. 9, 2018) (finding allegations of defendants' *indirect* harm to the "broader marketplace" insufficient to support a UDTP claim). Moreover, although Plaintiffs are correct that the Amended Complaint references third-party entities that acquired Piedmont, the mere mention of these other entities does not alter the fundamental character of this case, as the allegedly unfair conduct does not directly involve those entities. *See JS Real Estate Invs. LLC,* 2017 NCBC LEXIS 104, at *21; *Bandy v. Gibson,* 2017 NCBC LEXIS 66, at *21–22 (N.C. Super. Ct. July 26, 2017).

*Id.* at *56 (alterations in original).

31. Here, as in *Kelly*, the essence of Plaintiffs' allegations relates solely to a dispute between members of a single company, and their arguments concerning the indirect effects on commerce from Defendant's alleged acts are too attenuated to satisfy the "in or affecting commerce" prong of a UDTP claim.

32. Accordingly, Defendant's motion to dismiss the UDTP claim is GRANTED, and this claim is dismissed with prejudice.

## II. Breach of Fiduciary Duty

33. In his next argument, Defendant contends that the Bronsons' *individual* claim for breach of fiduciary duty should be dismissed on the ground that he did not owe such a duty to them.

34. It is well-settled that "[t]o establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of the injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339 (2019). Thus, in order "to make out a claim for breach of a fiduciary duty, plaintiffs must first allege facts that, taken as true, demonstrate that a fiduciary relationship existed between the parties." *Id*. at 339–40.

35. This Court has summarized the law governing fiduciary relationships between LLC members as follows:

> The law does not favor claims by one LLC member against another for breach of fiduciary duty. As the North Carolina Court of Appeals has explained, the North Carolina Limited Liability Company Act "does not create fiduciary duties among members." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). Rather, members of an LLC "are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." *Id.*
>
> Plaintiff relies on an exception to this general rule. Citing *Kaplan*, a few recent cases have stated that "a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016); *see also Zagaroli v. Neill*, 2016 NCBC LEXIS 106, at *18 (N.C. Super. Ct. Dec. 29, 2016); *SCA-Blue Ridge, LLC v. WakeMed*, 2016 NCBC LEXIS 2, at *20 (N.C. Super. Ct. Jan. 4, 2016); *Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, at *14–15 (N.C. Super. Ct. Oct. 30, 2013).

The scope of this exception, borrowed from precedents governing corporations, remains unsettled. This Court has cautioned against a broad application because of the fundamental differences between LLCs and corporations. *See HCW Ret. & Fin. Servs.*, 2015 NCBC LEXIS 73, at \*47 n.102; *see also Blythe v. Bell*, 2013 NCBC LEXIS 17, at \*13–14 (N.C. Super. Ct. Apr. 8, 2013). Unlike a corporation, "[a]n LLC is primarily a creature of contract." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 to 34-3 (rev. 7th ed. 2016)). The rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships. *See* N.C. Gen. Stat. § 57D-2-30 ("The operating agreement governs the internal affairs of an LLC and the rights, duties, and obligations of . . . the interest owners . . . in relation to each other"). Especially where the members have bargained for comprehensive terms to govern their relationship, the imprudent imposition of fiduciary duties could "undermine the contractual nature of an Operating Agreement." *HCW Ret. & Fin. Servs.*, 2015 NCBC LEXIS 73, at \*47 n.102.

*Strategic Mgmt. Decisions v. Sales Performance Int'l*, 2017 NCBC LEXIS 69, \*10–27

(N.C. Super. Ct. Aug. 7, 2017).

36. In the present case, the Complaint is silent on the issue of whether an operating agreement exists as to Lafayette. Thus, the Bronsons are unable to point to a contractual basis for their argument that Defendant owed them a fiduciary duty. Moreover, their attempt to show an existing duty in the absence of such a contractual provision is made even more difficult by the fact that, as the Complaint makes clear, the Bronsons now collectively own a majority ownership interest in Lafayette.

37. In *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605 (2018), our Supreme Court looked to Delaware law on the issue of whether a minority shareholder can owe a fiduciary duty to other shareholders in the corporate context.

To survive a motion to dismiss in Delaware, a claim for breach of fiduciary duty by a minority stockholder must contain more than the

bare conclusory allegation that a minority stockholder possessed control. Rather, the complaint must contain well-pled facts showing that the minority stockholder exercised actual domination and control over the directors. Even at the motion to dismiss stage, Delaware courts have noted that this actual control test is not an easy one to satisfy as stockholders with very potent clout have been deemed, in thoughtful decisions, to fall short of the mark.

*Id*. at 617 (cleaned up).

38.     In *Barefoot v. Barefoot*, 2022 NCBC LEXIS 8 (N.C. Super. Ct. Feb. 2, 2022), this Court recently applied—in the LLC context—the Supreme Court's framework as articulated in *Corwin*. The Court determined that the plaintiff's complaint had failed to satisfy the *Corwin* test.

Because [defendant] owns far less than 50% of the Company's voting power, [plaintiff] must demonstrate that [defendant] exercised actual control over [the company] in the form of "such formidable voting and managerial power that he, as a practical matter, is no differently situated than if he had majority voting control." In his Complaint, [plaintiff] alleges numerous times, in conclusory fashion, that [defendant] exercised actual domination and control over the Company, . . . and that the sale of the Property and Iris's signatures on the associated documents were procured as a result of [defendant]'s fraud and undue influence over Iris . . . . But the Complaint contains few, if any, details to explain how [defendant] controlled the Company and Iris and how he engaged in this alleged wrongdoing. . . . While these allegations demonstrate that [defendant] may have played a more active role in [the company] than his brothers, even taken together, they do not come close to showing "formidable" managerial control over the Company.

*Id*. at *50 (cleaned up).

39.     The Court in *Barefoot* concluded that "[b]ecause the Complaint relies on conclusory allegations rather than 'well-pled facts,' [plaintiff] has failed to demonstrate that [defendant] exercised 'formidable voting and managerial power'

over . . . the Company and, therefore, has not pleaded sufficient facts to show that [defendant] is a *de facto* majority member." *Id.* at *53.

40. Here, the Complaint is similarly short on specific allegations of control by Defendant and long on language that is merely conclusory on this issue. For example, the Bronsons allege that Defendant has consistently "managed the Company as if he were the sole member-manager" and that he "maintained exclusive dominion and control over the affairs of the Company[.]" (ECF No. 3, at ¶¶ 15, 28.) Such allegations fall far short of the specificity required under *Corwin*.

41. Defendant's motion to dismiss the Bronsons' individual claim for breach of fiduciary duty is therefore GRANTED, and this claim is DISMISSED without prejudice.

## III. Constructive Fraud

42. Finally, Defendant likewise seeks the dismissal of the Bronsons' *individual* claim for constructive fraud based, once again, on the absence of a fiduciary relationship between him and the Bronsons.

43. Our Supreme Court has stated that

[t]o assert a cause of action for constructive fraud, the plaintiff must allege facts and circumstances (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.

*Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9 (2018) (cleaned up). Additionally, our Supreme Court has made clear that "[a] claim for constructive fraud only arises where a confidential or fiduciary relationship exists." *Azure Dolphin, LLC v. Barton*,

371 N.C. 579, 599 (2018) (cleaned up); *see Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, 2021 NCBC LEXIS 15, at \*14 (N.C. Super. Ct. Feb. 18, 2021) ("A claim for constructive fraud likewise requires a plaintiff to allege facts establishing a confidential or fiduciary relationship.").

44.     As explained above, the Bronsons have failed to allege sufficient facts to show the existence of a fiduciary relationship between them and Defendant. Accordingly, Defendant's motion to dismiss their individual constructive fraud claim is GRANTED, and that claim is DISMISSED without prejudice. *See, e.g., Hauser v. Hauser*, 252 N.C. App. 10, 17 (2017) (affirming trial court's granting of defendant's motion to dismiss claim for constructive fraud where plaintiff failed to allege the existence of a fiduciary relationship between herself and defendants).[5]

## CONCLUSION

**THEREFORE, IT IS ORDERED** as follows:

1. Defendant's Motion to Dismiss Plaintiffs' claim for UDTP is **GRANTED**, and this claim is **DISMISSED** with prejudice;

2. Defendant's Motion to Dismiss Plaintiffs' individual claims for breach of fiduciary duty and constructive fraud is **GRANTED**, and these claims are **DISMISSED** without prejudice.

---

[5] Nothing herein shall affect the continuing validity of Plaintiffs' *derivative* claims for breach of fiduciary duty and constructive fraud in this action.

SO ORDERED, this the 12th day of September, 2022.


/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases